PHILIP HELLER, Plaintiff, *v.* HARRY ALTER, Defendant.*

Municipal Court of New York, Borough of Manhattan, Seventh District, February 25, 1932.

* Revd., 143 Misc. 783.

*Edythe Widdi*, for the plaintiff.

*Arthur N. Seiff*, for the defendant.

LEWIS, DAVID C., J.  On April 21, 1930, the defendant was served with a summons in this action instituted to recover for personal injuries and also for property damages sustained through the alleged negligent operation of a taxicab owned by the defendant.

At that time the defendant was covered by a policy of the Equitable Casualty and Surety Company, issued pursuant to the provisions of the Vehicle and Traffic Law.

Upon service of the process the defendant referred it to the insurance company, who thereupon and on or about the 25th day of April, 1930, caused its attorneys, Herschaft & Lamkay, to appear and interpose an answer on behalf of the defendant.

Thereafter the case was noticed for trial for May 19, 1930, and on May 26, 1930, marked " general calendar."

During December, 1930, the Equitable Casualty and Surety Company was taken over by the Liquidation Bureau of the Insurance Department of the State of New York, and on or about the 31st day of December, 1930, a formal order was duly entered in the Supreme Court, New York county, in the said liquidation proceedings, containing the usual injunctive and restraining provisions, and dircting, among other things, that " the officers, trustees, agents, servants " and others " of said Equitable Casualty Insurance Company, and all other persons, be enjoined and restrained from the further transaction of business or from dealing with or disposing of the property or assets of said corporation or doing or permitting to be done, any act or thing which might waste the assets or allow or suffer the obtaining of preferences or judgments, attachments or other liens; " and the said order contained additional similar restraining clauses binding upon various other designated persons.

On January 6, 1931, Herschaft & Lamkay received through the mail from the plaintiff's attorney a notice of trial for the 14th day of January, 1931; thereafter, apparently pursuant to said notice of trial, the case appeared upon the day calendar of the court on the 9th day of April, 1931, was marked adjourned to the 14th day of April, 1931, and thereupon further adjourned to May 5, 1931; and then upon the default of the defendant or his attorneys in appearing, again adjourned to May 19, 1931, when an inquest was taken and the judgment of $775 thereupon entered.

It is to be noted that under date of February 25, 1931, Francis P. Ward, as Special Deputy Superintendent of Insurance, on behalf of the Equitable Casualty and Surety Company in liquidation, wrote to the defendant advising him of the liquidation of the surety company and stating: " Kindly have an order entered substituting new attorneys in place of Herschaft & Lamkay, the attorneys of record   *   *   *."

At no time was any notice requiring the substitution of new attorneys served by or on behalf of the plaintiff on the defendant.

The defendant now claims that since December 31, 1930, he had no attorney representing him, and protecting his interests; that he never received any notice " to appoint another attorney;" and that he was not aware of the entry of any judgment against him until January, 1932, whereupon he brought on this application to set aside the inquest and vacate the judgment on the grounds that in consequence of the action of the Superintendent of Insurance and as a result of the liquidation proceedings the defendant's attorneys were discharged or removed; and that under section 240 of the Civil Practice Act the plaintiff was stayed from taking any further steps in this action except as provided in said section; that the plaintiff failed and omitted to comply with these provisions; that the notice of trial served on Herschaft & Lamkay on January sixth and all proceedings subsequent thereto were in contravention of section 240 of the Civil Practice Act, ineffective and of no legal force.

One is not here dealing with the ordinary attorney and client relationship created by the personal selection and retention of a particular individual lawyer by the client.   Here the relationship springs from the fulfilment or performance of the terms of the contract of insurance, wherein the control and conduct of any lawsuit is placed exclusively in the hands of the casualty company.

Presumably the policy (which must be approved by the Superintendent of Insurance) contained the customary clauses; that the Equitable Casualty Company " shall have the *exclusive right* to contest or settle any of the said suits or claims.   The *insured shall*

*not interfere in any way respecting* any negotiations for the settlement of any claim or suit, *nor in the conduct of any legal proceedings*, but shall, at all times, at the request of the corporation, render to it all possible cooperation and assistance."

These provisions that expressly gave the casualty company the right to designate the attorney impliedly carried with them the power to remove the attorney.

Hence, while as a matter of record the attorney would be the attorney for the defendant, as a matter of fact he would be the servant or agent of the casualty company.

In the case of *Devlin* v. *New York Mutual, etc., Ins. Co.* (213 App. Div. 152) the court expressly refers to these exclusive rights provided for by the policy and quotes them as a ground for the enforcement against the insurance company of a judgment entered against the insured in an undefended action.

Acting apparently pursuant to these policy provisions, the Superintendent of Insurance, on February 25, 1931, sought to have the defendant secure or substitute new attorneys to take the place of Herschaft & Lamkay.

We are not confronted with a case involving the questionable right of an attorney to arbitrarily withdraw from an action, but with an instance of the removal or discharge of the attorney by the party originally designating him.

And the record discloses that at least after December 31, 1930, the attorneys for this defendant were relieved of their duties and responsibilities and the defendant was practically left without their protection and representation.

Section 240 of the Civil Practice Act was enacted essentially for the protection of the party whose attorney has been removed or otherwise has become disabled, and not for the protection of his adversary.

Section 240 of the Civil Practice Act is derived from section 65 of the Code of Civil Procedure. The original text of section 65 of the Code of Civil Procedure reads: " If an attorney dies, is removed or suspended, or otherwise becomes disabled to act, at any time before judgment in an action, no further proceeding shall be taken in the action, against the party for whom he appeared, until thirty days after notice to appoint another attorney, has been given to that party, either personally, or in such *other* manner as the court directs."

The Code of Civil Procedure, section 65, was amended by chapter

741 of the Laws of 1913, by adding: " If after such notice, given as herein provided, no attorney appears for the party notified within the time specified in this section, the party serving the notice may proceed with the cause, and take a dismissal of the complaint, or a verdict, decision or judgment, as the case requires, and it is not necessary to give any further notice."

Section 240 of the Civil Practice Act omits the word " other " italicized above, and also omits the entire 1913 amendment.

The decisions sanction this interpretation and application of the provisions of this section. The annotators' note tells us that the amendments to the original text of section 65 of the Code of Civil Procedure were excluded, " because it is too drastic a provision and does not afford sufficient protection to the party to whom notice has been given under the first sentence. The last sentence was added by Laws of 1913, Ch. 741, Sec. 85, originally revised from 2 R. S., pt. 3, Chap. 3, tit. 2, Sec. 67."

And so it has been held that " The command of this statute is absolute. There shall be no further proceedings in the action as against the party for whom the attorney has appeared until the thirty days' notice to appoint another attorney has been given. This provision of the Code is founded upon a wise policy. A pending action needs constant attention; every step in it may be attended with important consequences to a party to it. The law provides an officer of the court to guard the interests of a litigant from the beginning to the end of the litigation; and if by a misfortune the party loses the protection of that officer the proceedings stop at that moment, and remain suspended until in the appointed way another attorney is substituted or the *proper notice* given by the opposing party to appoint one has been served. * * * But the prohibition of section 65 is not confined to proceedings requiring notice. It extends to all proceedings that may be taken by the adverse party, whether upon notice or otherwise." (*Commercial Bank* v. *Foltz*, 13 App. Div. 603, at pp. 605 and 606.)

Likewise, *McGovern* v. *Suter & Co.* (159 N. Y. Supp. 475) holds: " The prohibition of section 65 of the Code of Civil Procedure against any further proceedings under such circumstances until 30 days after the notice provided in that section is *absolute and in no way dependent on the knowledge of the other party of the death, removal* or other disability of his adversary's attorney " (p. 476).

The provisions of this section of the Civil Practice Act do not leave the other party remediless. If after the service of the notice no new attorney is designated, notices or papers can be served on the defendant personally. (*Hoffman* v. *Rowley*, 13 Abb. Pr. 399.)

In the instant case the procedure outlined by the Civil Practice

Act was not followed. No notice was ever given by the plaintiff, and the notice alleged to have been mailed by the Deputy Superintendent of Insurance was not a notice by the plaintiff. It was a notice sent pursuant to the order of the Supreme Court to the policyholders of the casualty company. Nor was this notice duly or properly served as required by section 240 of the Civil Practice Act.

That the casualty company became insolvent was to the defendant's disadvantage; it left him saddled with the full responsibility of the litigation. Hence, it constitutes more reason to look to the proper observation of the provisions of section 240 of the Civil Practice Act.

Ordinarily, one's sense of equity protests against the conclusiveness of an inquest so taken.

But the history of this cause, before and after the judgment, does not commend the defendant's application. The lapse of time, plaintiff's futile efforts to collect, and the status of the outstanding third party proceedings are all suggestive of a wild goose chase in store for a judgment creditor.

Yet these unfavorable features cannot cure the defect or deprive the defendant of his rights. The ends of justice would be best served by allowing the defendant his day in court while otherwise preserving the *status quo* by letting the judgment stand as security.

Motion granted accordingly, with ten dollars costs to plaintiff to abide the event. Case set for trial March 16, 1932.